IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VALERIE A. ALVA,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>JO ANNE BARNART,<br>Commissioner of Social Security,<br><br>　　　　　Defendant.<br>_____/ | CASE NO. CV-F-04-5951 LJO<br><br>**MEMORANDUM DECISION AND ORDER ON PLAINTIFF'S APPEAL FROM ADMINISTRATIVE DECISION** (Doc. 13 ) |

　　　　Plaintiff Valerie A. Alva ("claimant") seeks judicial review of an administrative decision denying her claim for Supplemental Security benefits under the Social Security Act, Title XVI ("Act"). Pursuant to 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73, the parties consented to proceed before a United States Magistrate Judge, and by a December 2, 2004 order, this action was assigned to United States Magistrate Judge Lawrence J. O'Neill for all further proceedings. Pending before the Court is claimant's appeal from the administrative decision of the Commissioner of Social Security ("Commissioner").

　　　　Claimant filed her complaint on July 9, 2004 and her opening brief on April 29, 2005. The Commissioner filed her opposition to the appeal on August 2, 2005. Claimant filed a reply brief on August 18, 2005.

/////

/////

# BACKGROUND

## Administrative Proceedings

Claimant protectively filed an application for supplemental security income under the Social Security Act July 12, 2002. (Administrative Record "AR" 76, 109.) She alleges a disability onset of January 1, 1999 due to lower back pain and disc disease. (AR 76, 109.) Claimant had filed a prior application for benefits in 2001 alleging disability since January 1, 1999. That initial application was denied initially and claimant did not appeal the denial. (AR 53-54, 72, 81.) Claimant's second application was further denied by an Administrative Law Judge ("ALJ") in a decision issued on February 26, 2004. (AR 15-20.) The Appeals Council denied review. (AR 6-8.) Claimant filed this action for judicial review pursuant to 42 U.S.C. § 405(g).

## Claimant's Background and Work Experience

Claimant was born on May 30, 1964. (AR 301) She completed the eleventh grade. (AR 301.)

## Medical History

The pertinent medical history is summarized as follows.[1]

Claimant's primary treating physician was Ronnie Claiborne, M.D. (AR 207-288.) She saw Dr. Claiborne from 1997 through 2003. On July, September 1998, claimant complained of low back pain. (AR 276, 277.) She reported low back pain again in March 1999. (AR 262.) Claimant continued reporting low back pain into September 1999 (AR 248-249.) She was referred to an orthopedist and for an MRI. The MRI performed on October 14, 1999 showed central and left-sided disc protrusion and moderate facet and ligamentous hypertrophy at L5-S1 resulting in moderate canal stenosis and mild bilateral foraminal stenosis; a diffusely bulging disc and facet and ligamentous hypertrophy and L4-5 resulting in mild to moderate canal stenosis with no foraminal stenosis. (AR 184.) On July 11, 2002, claimant reported back pain, stiffness and numbness. (AR 226.) She was prescribed Darvocet. An MRI of the lumbar spine on December 19, 2002, showed L5-S1 moderate to advanced lateral recess stenosis more so on the right secondary to broad based 3-4 mm annular bulge or disc protrusion, associated with

---

[1] The medical history pertaining to claimant's psychiatric condition is not summarized in this opinion because the condition is not at issue in this appeal.

spondylitic change and moderate facet arthropathy with associated 40-50% foraminal narrowing bilaterally; and L4-5 mild bilateral recess stenosis secondary to broad based annular bulge and mild to moderate facet arthropathy. (AR 183.)

Claimant presented for an orthopedic consultative examination on June 30, 2001 with Juliane Tran, M.D. (AR 145-148.) Claimant reported back pain for three years. (AR 145.) She described the pain as a 10 out of 10. Claimant reported doing some house work, yard work, vacuuming, mopping and dishes. (AR 145.) On examination, claimant had normal gait, could get on and off the examination table and remove her socks and shoes with ease. (AR 146.) Dr. Tran noted tenderness to palpation at the left sciatic notch. Her impression was chronic back pain with possible chronic left lumbar radiulopathy and decreased range of motion. (AR 147.) Dr. Tran assessed claimant as restricted to activities involving frequent bending and stooping, or activities involving lifting more than 25 pounds occasionally and more than 10 pounds frequently. (AR 147.) She is also restricted with activities involving frequent stooping, bending and kneeling and prolonged sitting, standing, fingering, grasping, reaching, climbing, and balancing. (AR 147.)

On July 16, 2001, the state agency physician reviewed the medical records and completed the Physical Residual Functional Capacity Assessment form. (AR 149-156.) He opined that claimant could occasionally lift 20 pounds and frequently 10 pounds; could sit/walk/stand 6 hours in an 8-hour workday, no postural limitations, but limited to occasional climbing, balancing, stooping, kneeling, crouching and crawling. (AR 150-151.)

Claimant presented for a comprehensive orthopedic evaluation with Norm Linder, M.D. on December 11, 2002. (AR 178-181.) Claimant complained of low back pain with numbness on the left lower extremity. (AR 178.) On examination, claimant was not in distress and was able to sit comfortably and to transfer on and off the table. (AR 179.) Claimant had normal gait, negative straight leg raising, tenderness to palpation in the lumbosacral paraspinals. (AR 180.) Dr. Linder diagnosed degenerative disc disease at L4-L5 and L5-S1, per an MRI and lumbosacral musculoligamental strain. (AR 180.) Dr. Linder functionally assessed claimant with lifting frequently 10 pounds and 20 pounds occasionally; stand/sit/walk for six hours out of an eight hour day; and refrain from frequent climbing, stooping and crouching. (AR 181.)

On January 6, 2003, state agency physician Lavanya Bobba, M.D. completed the Physical Residual Functional Capacity Assessment form. (AR 187-194.) Dr. Bobba opined that claimant could occasionally lift 20 pounds and frequently 10 pounds; could sit/walk/stand 6 hours in an 8-hour workday, with occasional postural limitations,

Dr. Claiborne referred claimant for a neurological consultation with I. Fayaz, M.D. (AR 204-206.) Claimant presented for examination on April 21, 2003 with complaints of low back pain with leg pain. On examination, Dr. Fayaz reported that claimant had decreased lumbar range of motion, but was able to walk heel and toes. There was local tenderness in the sacroiliac joint area, but no other abnormalities. Straight leg raising was bilaterally positive. (AR 205.) Sensory and motor examinations were normal. (AR 205.) Dr. Fayaz reviewed the past MRIs, including the 2002 MRI, and his impression was lumbar disc degeneration, spondylosis, with canal and foraminal stenosis, and mechanical back pain, in excess of radicular left leg pain, no obvious instability or pathological problems, neurologically intact sensory and motor. (AR 205.) Dr. Fayaz's treatment plan was no surgical intervention, but recommended epidural steroids, physical therapy twice a week for eight weeks, pelvic traction and to loose weight. (AR 206.) Dr. Fayaz opined that claimant's prognosis was stable and she will likely improve. He restricted her to lifting no more than 40 pounds and avoid repetitive bending and twisting. (AR 206.)

On January 22, 2004, Dr. Claiborne completed a check-the-box form in which he opined that claimant can sit/stand/ walk 2 hours a day without a break and a total of 4 hours out of 8 in a day. (AR 294.) He opined that she could lift up to 25 pounds occasionally and frequently lift up to 5 pounds and never use her lower extremities for pushing and pulling and never bend, squat, crawl or climb. (AR 294.)

In a second evaluation in a fill-in-the-blank form, Dr. Claiborne opined that claimant can continuously sit/walk/stand for 2 hours at a time for a total of 2-4 hours in an 8 hour workday. (AR 295.) Dr. Claiborne opined that claimant would have to alternate sitting and standing positions frequently and that claimant could not sit with her head in a flexed forward position and was precluded from lifting greater than 40 pounds. (AR 295.) He described her pain as moderate which would restrict her ability to maintain concentration. (AR 295.)

4

**Hearing Testimony**

Claimant reported that pain in her back prevents her from sitting or standing too long. (AR 303.) She cannot lift more than 10 pounds, cannot walk more than 2 and one half blocks and can stand for 30 minutes. (AR 303.) She did not take epidural shots because she was afraid it would harm her spine and she is afraid of needles. (AR 305.) She said she has pain in her knees, hips and feet on the scale of 9 to 10. (AR 306-307.) She lays down most of the day because of the pain. (AR 309.) She has trouble with getting dressed. (AR 310.) She feels if she had a job she would have to lie down during part of the day. (AR 313.) She said she had felt this was for the past 11 years and it is getting worse. (AR 313.) She has a child confined to a wheel chair who she takes care of with help from claimant's mother. (AR 315.)

**ALJ Findings**

In her February 26, 2004 decision, the ALJ characterized the "primary issue" before her as whether claimant was disabled. (AR 15.) In determining claimant was not disabled and not eligible for disability benefits, the ALJ made the following findings (AR 20):

1. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

2. The claimant's degenerative disc disease of the lumbar spine is "severe" impairment, based upon the requirements in the Regulations. 20 CFR §416.920.

3. This medically determinable impairment does not meet or medially equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

4. The claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

5. The claimant has the residual functional capacity to occasionally lift up to 20 pounds, frequently lift and carry up to 10 pounds, and sit, stand or walk for 6 hours in an 8-hour day, with regular breaks. The claimant is able to only occasionally stoop, crouch, climb and crawl.

6. The claimant has no past relevant work. 20 CFR §416.965.

7. The claimant is 39 years old, which is defined as a younger individual. 20 CFR

§416.963.

8. The claimant has an eleventh grade (limited) education. 20 CFR §416.964.

9. The claimant has the residual functional capacity to perform a significant range of light work. 20 CFR §416.967.

10. Although the claimant's exertional limitations do not allow her to perform the full range of light work, the range of light work which she could perform is not substantially eroded. Using Medical-Vocational Rule 202.17 as a framework for decision-making, a finding that the claimant is not disabled, is appropriate.

11. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision. 20 CFR § 416.920(f).

## DISCUSSION

### Standard of Review

Congress has provided a limited scope of judicial review of a Commissioner's decision. *See* 42 U.S.C. § 405(g). A court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Sanchez v. Secretary of Health & Human Services*, 812 F.2d 509, 510 (9th Cir. 1987) (two consulting physicians found applicant could perform light work contrary to treating physician's findings). Substantial evidence is "more than a mere scintilla" (*Richardson v. Perales*, 402 U.S. 389, 402 (1971)), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401.

The record as a whole must be considered, weighing both the evidence that supports and detracts from the Commissioner's conclusion. *Jones,* 760 F.2d at 995. If there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

Thus, this Court reviews the Commissioner's decision pursuant to 42 U.S.C. § 405(g) to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence

in the record as a whole. *Copeland v. Bowen*, 861 F.2d 536, 538 (9th Cir. 1988).

Claimant contends the ALJ's sole error is in rejecting the opinion of claimant's treating physician, Dr. Claiborne.

## The ALJ's Finding of Residual Functional Capacity

To qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382(a)(3)(A).

The Commissioner has final responsibility to determine a claimant's residual functional capacity. 20 C.F.R. § 404.1546. "Residual functional capacity" is the phrase used by the Commissioner to denote a claimant's ability to perform work-related tasks despite his physical or mental impairments. 20 C.F.R. §§ 404.1545(a) and 416.945(a). Categories of residual functional capacity include sedentary, light, medium, heavy and very heavy work. 20 C.F.R. §§ 404.1567 and 416.967. In this case, the ALJ found that plaintiff had the residual functional capacity to perform light work, with restrictions. Under the applicable regulations, "light work" is defined as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. §§ 404.1567(b) and 416.967(b). Social Security Ruling 83-10 further defines this term by stating that " . . . the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." Ruling 83-10 further explains that "[s]itting may occur intermittently during the remaining time."

Here, the ALJ found that the claimant has the residual functional capacity to occasionally lift up to 20 pounds, frequently lift and carry up to 10 pounds, and sit, stand or walk for 6 hours in an 8-hour day, with regular breaks. The claimant is able to only occasionally stoop, crouch, climb and crawl.

Claimant argues that the ALJ should have adopted Dr. Claiborne's limitations. Dr. Claiborne opined that Ms. Alva could stand and walk for a total of 4 hours a day, and sit 4 hours a day. (AR 294-295.) Dr. Claiborne opined that Ms. Alva would need a sit/stand option and would need to lay down

periodically throughout the day.

Generally, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The Ninth Circuit has held that a treating physician's opinion is generally to be afforded great weight in disability cases because he or she ". . . is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987); *see also* 20 C.F.R. §§ 404.1527(d) and 416.927(d). However, a treating physician's opinion is not conclusive as to a claimant's physical condition or the ultimate issue of disability and may be disregarded by the ALJ even where it is not contradicted. 20 C.F.R. § 404.1527(e); *Rodriquez v. Bowen*, 876 F.2d 759, 761-762, n. 7 (9th Cir. 1989); *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (inconsistencies and ambiguities in treating physician's opinion concerning level of disability sustained by social security claimant, were specific and legitimate reasons for not accepting physician's opinion.)

The Ninth Circuit Court of Appeals has established requirements when an ALJ disregards the treating physician's opinion:

> "The ALJ may disregard the treating physician's opinion, but only by setting forth "specific, legitimate reasons for doing so, and this decision must itself be based on substantial evidence." This burden can be met by providing a detailed summary of the facts and conflicting clinical evidence, along with a reasoned interpretation thereof. *Id.* Furthermore, the ALJ's reasons for rejecting the doctor's opinion must be "clear and convincing."

*Rodriquez,* 876 F.2d at 762 (citing *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

A statement by a physician indicating a claimant is "disabled" does not mean that the Secretary will concur, absent review of medical findings and other evidence. 20 C.F.R. §416.928. Claimant bears the burden of proving that he is disabled by presentation of "complete and detailed objective medical reports of h[is] condition from [a] licensed medical professional." *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (citing 20 C.F.R. 404.1512(a)-(b), 404.1513(d)).

The ALJ gave a detailed summary of the facts and conflicting clinical evidence. (AR 15-17.) The ALJ reviewed all of the objective medical evidence in the record, including Dr. Claiborne's treatment records, the 2004 assessment of Dr. Claiborne, the consultative examinations by Dr. Tran and Dr. Linder, the examination by Dr. Fayaz and the MRIs.

8

The ALJ said that he gave Dr. Claiborne's two assessments limited weight:

> "Limited weight is given to the January 2004 assessments of the treating physician, which would restrict the claimant to a narrow range of sedentary exertion by the limitations of lifting no more than 5 pounds frequently, the frequent alternation between sitting and standing, lying down to relieve pain and the preclusion of use of the lower extremities for pushing and pulling." (AR 18.)

The ALJ stated reasons for giving this opinion limited weight:

> "These restrictions are not supported by the findings in the treating record, which shows only the claimant's complaints of back pain; further, they are contradicted by the findings and the opinions contained in the consultative examinations. The statements of capacity appear to be accommodations for the claimant, rather than impartial assessments of her limitations." (AR 18.)

The Commissioner argues that the ALJ did not err. The Commissioner argues that while there was objective evidence to support the nature and severity of claimant's back impairment, Dr. Claiborne's treating records did not provide objective evidence of the *limitations* resulting from her impairments. (Opposition Brief p.10:17-22.) The point is well taken.

Dr. Claiborne's treatment notes recorded claimant's subjective complaints of low back pain. He did not record objective clinical tests of claimant's functional limitations, such as gait, range of motion, motor strength.[2] Dr. Claiborne referred claimant for an orthopedic evaluation, which did not take place. Dr. Claiborne also referred claimant to Dr. Fayaz for a neurological evaluation. On examination, Dr. Fayaz, among other things, reviewed the December 2002 MRI and recommended physical therapy, conservative medications and epidural shots. (AR 206.) Dr. Fayaz functional limitations assessed claimant with inability to lift more than 40 pounds. (AR 206.) Thus, the examining physician to whom Dr. Claiborne referred claimant did not find claimant as limited as Dr. Claiborne later determined.[3] An

---

[2] Claimant argues in reply the Dr. Claiborne treated plaintiff for seven years and his treatment notes should not be viewed in a vacuum. Yet, claimant does not cite to treatment records wherein objective tests were performed or to tests with findings to corroborate claimant's position. The Court's review of the Record did not disclose such tests by Dr. Claiborne.

[3] In reply, claimant argues the significant findings in the MRI of moderate to advanced lateral stenosis, provides objective support for Dr. Claiborne's opinion of claimant's impairment. The ALJ, in fact, did find claimant's impairment severe, due to the objective evidence provided. (AR 15.) The ALJ simply gave more weigh to Dr.Fayaz's opinion, who specifically evaluated the MRI, yet determined claimant was restricted only to lifting weight less than 40 pounds. It is the ALJ's duty to resolve conflicting medical evidence. *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003)

9

ALJ may reject a treating physician's opinion whether or not it is contradicted, if the opinion is "brief and conclusory in form with little in the way of clinical findings to support its conclusion." *Magallanes v Bowen,* 881 F.2d 747, 751 (9th Cir. 1989).

The ALJ relied upon the two consultative examinations and the examination of Dr. Fayaz. As to the consultative examinations, the ALJ said:

> "In evaluating the medical evidence about the claimant's physical impairment, the Administrative Law Judge accords very substantial weight to the consultative orthopedic examinations in June 2001 and December 2002. These examinations were performed by physicians board-certified in physical medicine/rehabilitation, which enhances the credibility of the examination findings and the examiners' conclusions that the claimant would be able to perform light exertion, with postural limitations. The examinations offer longitudinal evidence that the claimant had mild to moderate limitations of lumbar flexion, and mild objective evidence of left-sided radiculopathy." (AR18.)

The two consultative examinations spanned more than a year and a half, giving the ALJ the longitudinal picture of claimant's impairment. Another four months later, claimant was seen by Dr. Fayaz. The ALJ said of Dr. Fayaz's examination:

> "The April 2003 examination of the claimant by neurosurgeon Dr. I. Fayaz shows similar moderate examination findings, and his recommendations of physical therapy, epidural shots, and continued conservative medications for the claimant would be inconsistent with a finding that she was disabled." (AR 18.)

The ALJ noted the universal medical opinion, by the examiners, state agency physicians, Dr. Fayaz, all with the exception of Dr. Claiborne, that claimant can perform light exertion with postural limitations. (AR 18.) Where the opinion of the claimant's treating physician is contradicted, and the opinion of a nontreating source is based on independent clinical findings that differ from those of the treating physician, the opinion of the nontreating source may itself be substantial evidence. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (holding examining physician's opinion that claimant could lift and carry 20 to 50 pounds constituted "substantial evidence" in support of ALJ's finding that claimant could perform medium work, where examining physician's opinion was based on results of "his own independent examination"); *Allen v. Heckler,* 749 F.2d 577, 579 (9th Cir.1984) (holding where

---

(Where, as here, the record contains conflicting medical evidence, the ALJ is charged with determining credibility and resolving the conflict.).

10

examining physician offered opinion, based on "his own neurological examination," that claimant could perform sedentary work, while treating physician opined that claimant was totally disabled, ALJ's finding that claimant could perform sedentary work was supported by "substantial evidence"). Thus, there is substantial evidence in the Record to support the ALJ's decision.

## **CONCLUSION**

The Court finds no error in the ALJ's analysis. As such, the ALJ's decision is supported by substantial evidence in the Record as a whole and based on proper legal standards. Accordingly, this Court DENIES claimant's appeal from the administrative decision of the Commissioner of Social Security. The clerk of this Court is DIRECTED to enter judgment as a matter law in favor of defendant Jo Anne B. Barnhart, Commissioner of Social Security and against claimant Valerie A. Alva.

IT IS SO ORDERED.

**Dated:   September 14, 2005**            /s/ Lawrence J. O'Neill
b9ed48                                             UNITED STATES MAGISTRATE JUDGE